UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOLAN BROTHERS SHELLFISH COMPANY, INC., | : : : | |
| Plaintiff, | : : | |
| v. | : : : | 3:05-CV-1385 (WWE) |
| ROGER BOISSONEAULT, TERRI BOISSONEAULT, SHORELINE BLASTING CORP. and PETER JESSEY, | : : : : : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

This action arises from plaintiff Dolan Brothers Shellfish Company, Inc.'s ("Dolan") allegations that defendants Roger Boissoneault, Terri Boissoneault, Shoreline Blasting Corporation and Peter Jessey (collectively, "defendants") caused damage to plaintiff's deeded shell fishing lot, ("Lot 51"), as a result of blasting operations conducted on land and attempted dredging activity occurring in the waters off Branford, Connecticut. Defendants move to dismiss, claiming that this Court lacks subject matter jurisdiction over this matter.

**BACKGROUND**

Plaintiff alleges that in September 2002, defendants Roger and Terri Boissoneault hired Shoreline Blasting Corporation and Peter Jessey to conduct blasting operations at real property located at 39 Ferry Lane, Branford, Connecticut. As a result of this blasting, plaintiff alleges, large amounts of debris entered Long Island Sound,

1

coming to rest upon Lot 51, an oyster bed owned by plaintiff.  Plaintiff claims that defendants' attempt to clean this debris resulted in more damage to the lot. Consequently, plaintiff asserts, it was unable to use Lot 51 for its intended purpose: the harvesting of oysters which plaintiff then sold on the open market.

Plaintiff's complaint includes five counts as to all defendants: 1) negligent property damage; 2) interference with and loss of use of property; 3) breach of contract; 4) breach of implied contract; 5) breach of contract/third party beneficiaries; and two counts against Shoreline Blasting and Peter Jessey : 1) strict liability and 2) breach of warranty of workmanlike performance.  It also asserts one count against Roger and Terri Boissoneault: 1) negligent selection and supervision of blasting contractor.

Plaintiff claims that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333(1) and the Admiralty Extension Act, 46 U.S.C. § 740.[1]  Defendants argue that the instant suit does not fall within the purview of either statute and therefore this Court lacks subject matter jurisdiction.

**DISCUSSION**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the  allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).  In considering a

---

[1] 46 U.S.C. § 740 was repealed, in unrelated part: PL 109-304, 2006 HR 1442 (October 6, 2006).

motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

In order for admiralty or maritime jurisdiction to exist pursuant to 28 U.S.C. § 1333(1)[2], a party must satisfy conditions of locality and of relationship or connection with maritime activity. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The locality test requires the court to assess whether the tort in question occurred on navigable waters or whether the tort that occurred on land was caused by a vessel on navigable waters. The court must then evaluate whether the connection test is satisfied. The connection test requires the fulfillment of a two prong test: 1) whether the incident in question has a "potentially disruptive impact on maritime commerce" and 2) whether the character of the activity giving rise to the incident demonstrates a "substantial relationship to traditional maritime activity." Id.

In the present case, plaintiff claims, inter alia, that its complaint satisfies both the locality and connection tests in that: 1) Lot 51 is located in the navigable waters of Long Island Sound and the tort occurred therein; 2) defendants' blasting of their property damaged the shellfish bed and defendants' attempt to remediate this damage caused further harm, thereby having a disruptive impact on plaintiff's use of the bed, an example of maritime commerce; and 3) the cleanup operation, because it was attempted in order to remedy the problem, had a substantial relationship to traditional

---

[2] 28 U.S.C. § 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: 1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all remedies to which they are otherwise entitled."

maritime activity in that it was conducted in order to correct a condition of the waters and to protect the commerce conducted therein.

Defendants argue that plaintiff's land excavation is the relevant activity that must have a substantial relationship to the maritime activity and that such connection is "fortuitously and incidentally connected to navigable waters" and "bears no relationship to traditional maritime activity." Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 273 (1972) (holding that an airplane crash into navigable waters, while having an effect on the waters, does not evidence a substantial relationship to maritime activity because the subject of the case was air travel, not the impact on navigable waters).

The Court finds, however, that the conduct in question is defendants' improper dredging of the waters causing further damage to the shellfish bed. This dredging required defendants' alleged use of an excavator that entered the shellfish bed at low tide and attempted, allegedly unsuccessfully, to remove the debris from the bed, causing additional damage. The presence of the excavator in the navigable waters of Long Island Sound distinguishes this case from Executive Jet. The excavator was in the water purposely to remediate damage caused by defendants; in Executive Jet, the plane was, tragically, in the water accidently. The motive of defendants was to effect change in the condition of the water and restore plaintiff's use of the bed for maritime commerce. The connection of the excavation to the commerce is evident and, therefore, plaintiff satisfies the requirements for admiralty jurisdiction.

Even if the excavator was not located in the water, the attempts to clean the shellfish bed of debris from land would also provide plaintiff with admiralty jurisdiction. Pursuant to the locality test, the tort occurs where the alleged negligence took effect,

4

rather than where the negligent act was committed. Harville v. Johns-Manville Products Corp., 731 F.2d 775, 782 (11th Cir 1984).

This is demonstrated in Kelly v. Smith, 485 F.2d 520, 526 (5th Cir. 1973), cert. denied, 416 U.S. 969 (1974), in which the court found that maritime jurisdiction applied where a pilot of a boat on a navigable river was shot by a rifle fired on land. Finding that the incident caused sufficient danger to maritime commerce, the court determined that the federal interest in protecting navigation on navigable waters "overrides any considerations of federal-state comity or conflicts of interest." Id.

Plaintiff asserts that the excavation and blasting of the Branford property and the attempt to remedy the resulting damages to the shellfish bed are the cause of the tort. Consistent with Harville and Kelly, this Court finds that even if the act causing the tort was only that activity conducted on land, plaintiff has satisfied the locality test for admiralty jurisdiction.

Because plaintiff is entitled to admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1), it is not necessary for the Court to analyze the applicability of the Admiralty Extension Act, 46 U.S.C. § 740, and the Court declines to do so.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion to dismiss [Doc. #52].

Dated this 29th day of March, 2007 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge